IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| REBECCA MEISSE, | : | |
| | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | NO. 22-02993-NIQA |
| v. | : | |
| | : | |
| TEMPLE UNIVERSITY BOARD OF TRUSTEES, ET AL. | : | |
| | : | |
| Defendants, | : | |

**REPORT OF RULE 26(f) MEETING**

In accordance with Federal Rule of Civil Procedure 26(f), counsel for the parties conferred on November 17, 2022, and submit the following report of their meeting for the Court's consideration:

Rule 16 Conference:   Not scheduled.

**1.      Discussion of Claims, Defenses, and Relevant Issues**

<u>**Plaintiffs Statement of the Case:**</u>

In July 2022, Plaintiff initiated this lawsuit over the violation of Plaintiffs' right to due process of law under 42 U.S.C. §1983 and violations of Plaintiff's First Amendment rights. The suit arose out of the Defendants' egregious mishandling of an incident reported to Temple University that did not occur on University property, during a University event or in relation to any University happenings. On September 12, 2020, the Philadelphia Police responded to Plaintiff's residence on a noise complaint. No citation was issued. Plaintiff was not ticketed or cited with having violated any city ordinance. There was no determination that the noise that prompted the response of the Philadelphia Police came from Plaintiff. On September 21, 2020,

Plaintiff was accused of violating the University's "Good Neighbor" policy and "Other "policy,

against the weight of the evidence. Plaintiff appealed the decision. During the appeal process, the

University did not allow Plaintiff to be represented by her counsel, in direct violation of her rights.

Plaintiff's Documents:   Plaintiff has not produced any documents.

Defendants' Statement of the Case:

Plaintiff, who graduated from Temple's nursing program on time, in May 2021,[1] alleges

Defendants violated her alleged Due Process and First Amendment rights by placing her on 3.5

months' probation after finding her responsible for violating two sections of its Student Conduct

Code in 2020. These violations arose from Temple's receipt of an Incident Report from the Temple

Police, describing a party of 20 plus people at Plaintiff's apartment in September 2020, during the

COVID-19 pandemic. A neighbor complained about the noise and the Temple Police could hear

the party from the street. Exhibit 2 (Temple/Meisse 00040). Specifically, Temple found Plaintiff

violated its August 29, 2020 policy prohibiting social gathering during the COVID-19 pandemic

("COVID Policy") and its Good Neighbor Policy. Plaintiff also alleges Defendants failed to

communicate to Plaintiff the basis for finding her responsible. Temple's Student Conduct Code,

COVID Policy, related communications with the City of Philadelphia Health Department and

Temple's Good Neighbor Policy are attached hereto as Exhibit 3 (Temple/Meisse 00001-00035).

The Temple Defendants raise the following defenses:

First, Plaintiff cannot establish a constitutional violation because a student who is placed

on probation, and is not suspended or expelled, is not deprived of a constitutionally protected right

and lacks standing to pursue the claims. *See Sill v. Pennsylvania State University,* 462 F.2d 463,

---

[1] Exhibit 1 (Temple/Meisse 00038-39).

470-71 (3d Cir.1972) (upholding District Court's dismissal of complaint alleging violations of First, Fifth and Fourteenth Amendments because students "merely placed on probation have not been aggrieved to the degree that they can claim deprivation of their constitutional rights."). In *Sill,* some students had been placed on probation for two years and others until graduation. *Sill v. Pennsylvania State University,* 318 F.Supp. 608, 614 (M.D. Pa. 1970).

Second, even if this Court were to find the sanctions imposed upon Plaintiff were significant enough to warrant constitutional protections, Temple's disciplinary process and the process afforded Plaintiff meet constitutional muster. "Universities like Temple are entitled to establish their own rules and regulations, including disciplinary proceedings, and the courts should interfere only where it is clear that Constitutional rights have been infringed." *Segal v. Temple Univ. Sch. of Law,* No. 99–3220, 1999 WL 1210838, *4 (E.D.Pa.1999) (citing *Esteban v. Cent. Mo. State Coll.,* 415 F.2d 1077, 1090 (8th Cir.1969)). "The basic elements are notice and the opportunity to be heard by a fair and impartial tribunal legally constituted and having jurisdiction of the cause." *Sill,* 462 F.2d 463 at 469 (citation omitted). Courts in this jurisdiction have found Temple's disciplinary process, which is set forth in its Student Conduct Code[2], passes constitutional muster. *See e.g. Furey v. Temple Univ.,* 884 F. Supp.2d 223, 258-59 (E.D.Pa. 2012) (recognizing Temple "has an interest in maintaining safety on its campus and within its student body."); *Johnson v. Temple Univ.,* Civil Action No. 12-515, 2013 WL 5298484, *9 (E.D. Pa. Sept. 19, 2013) (noting courts in the Third Circuit have considered and concluded Temple's Student Code of Conduct complies with Due Process requirements).

In fact, *if* the Court decides Plaintiff's sanctions were sufficiently egregious to necessitate

---

[2] Exh.3  (Temple/Meisse at 00013-19, 22-23).

constitutional protections even though she was merely placed on probation for 3.5 months, it should find Temple gave Plaintiff far more process than the Due Process Clause requires. First, Temple sent Ms. Meisse a charge letter dated September 21, 2022, which stated the relevant sections of the Student Conduct Code Ms. Meisse was alleged to have violated ("Charge Letter"). Exhibit 4 (Temple/Meisse at 00047-48). The letter asked Ms. Meisse to call her Program Coordinator to schedule her Process Review Meeting ("PRM"). Exh. 4. The Student Conduct Code explains the purpose of the PRM. Exh. 3 (Temple/Meisse at 00013-14).

On October 6, 2020, former Program Coordinator Amanda Fish met with Ms. Meisse over Zoom™ for the PRM. During the PRM, Ms. Fish explained the Student Conduct process, as guided by the PRM Outline. *See* PRM Outline and email exchange, Exhibit 5 (Temple/Meisse 00057, 64, 78). Ms. Fish explained the Charge Letter, the conduct process, and the potential sanctions that Ms. Meisse may incur if she were found to be responsible of the charges, among other things. Ms. Fish gave Ms. Meisse the option to proceed to an Administrative Hearing that same day or to schedule either an Administrative Hearing or a more involved Board Hearing at a later date. (Temple/Meisse 00078). Ms. Meisse decided not to proceed to an Administrative Hearing on the same day as the PRM. Thereafter, Ms. Meisse had an email exchange with Ms. Fish in which Ms. Fish explained to Ms. Meisse that the First Amendment did not absolve Ms. Meisse of violating Temple's policies. *See* Exhibit 6 (Temple/Meisse 00062-63).

Ms. Meisse then scheduled an Administrative Hearing at a time that was convenient for herself and her two attorney advisors, Joseph Lento and Keith Altman, who submitted a six (6) page single spaced position paper ("Position Paper") in advance of the Administrative Hearing. Exhibit 7 (Temple/Meisse 00065-70). Christina Peterson, M.Ed., Associate Director in the Student Conduct Office, reviewed the Position Paper and conducted Ms. Meisse's Administrative Hearing

on November 13, 2020 via Zoom™. Ms. Meisse's attorney advisors were present over Zoom™ throughout the entire hearing. Complaint, ¶ 26. By a letter dated November 18, 2020, Megan Patrick, Ed.D., Assistant Dean of Students, advised Ms. Meisse the Student Conduct Office determined she violated the Student Conduct Code and that her discipline comprised:(i) receipt of the November 18, 2020 letter reprimanding her; and (ii) probation for approximately 3.5 months, from November 17, 2020 to March 2, 2021. Exhibit 8 (Temple/Meisse 00073-75). Probation is explained in the Student Conduct Code. Exhibit 3 (Temple/Meisse 00019). This letter also explained the appeal process. Exhibit 8 (Temple/Meisse 00073-75).

Plaintiff appealed and resubmitted her Position Paper. An Appeal Board, made up of three (3) individuals, none of whom had been involved in the original hearing, reviewed Ms. Meisse's appeal, including her Position Paper, and upheld the decision. Exhibit 9 (Temple/Meisse 00076-77).

Third, Plaintiff cannot prevail on her First Amendment claim. To state a First Amendment retaliation claim, Plaintiff must show that: (1) she engaged in constitutionally protected conduct, (2) Defendants engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising her constitutional rights, and (3) a causal link existed between the constitutionally protected conduct and the retaliatory action. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019); *see also Ambrose v. Del. State Univ.*, Civil Action No. 21-416, 2021 WL 3568373, at *5 (D. Del. Aug. 12, 2021).

Ms. Meisse was not involved in constitutionally protected activity. Plaintiff admits she had a party attended by twenty (20) plus people. Complaint, ¶ 13. *See also* Exhibit 2 (Temple/Meisse 00040). Contrary to Plaintiff's allegation that Defendant retaliated against Plaintiff by sanctioning her for having the party, Defendant adopted the COVID Policy at the behest of the City of

Philadelphia and to keep the Temple community safe during the COVID-19 pandemic. Exhibit 3 (Temple/Meisse 00027-31). Temple is entitled to keep its community safe. *See Furey v. Temple Univ.,* 884 F. Supp.2d 223, 258-59 (E.D.Pa. 2012). (Temple/Meisse 00040). The evidence will show that Plaintiff was one of many students disciplined, including via probation, for violating the COVID Policy and the Good Neighbor Policy during the Fall of 2020.

Fourth, the Individual Defendants have qualified immunity, which is "an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (citation omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Doe v. Pennsylvania State Univ.,* 336 F.Supp. 3d 441, 451 (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). This doctrine "shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Miller*, 544 F.3d 542, 547 (3d Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

The Third Circuit applies a two-part test to qualified immunity defenses: "We first determine whether a right has been violated. If it has, we then must decide if the right at issue was clearly established when violated such that it would have been clear to a reasonable person that her conduct was unlawful." *Porter v. Pennsylvania Dep't. of Corr.,* 974 F.3d 431 (3d Cir. 2020) (citation omitted). Here, Defendants have not violated a constitutional right for the reasons already stated.[3] If the Court determines to undertake this analysis, the inquiry "must be undertaken in light

---

[3] *Sill v. Pennsylvania State Univ.,* 462 F.2d 463, 470-71 (3d Cir.1972).

of the specific context of the case, not as a broad general proposition. ..." *Saucier v. Katz*, 533 U.S. 194, 201–02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (receded from on other grounds by *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808 (2009)).

The COVID-19 Pandemic and Temple's efforts to keep its community safe is the context for any such analysis. There is no clearly established constitutional right to have a social gathering with twenty (20) plus people during a global pandemic. Thus, the Individual Defendants should prevail based on qualified immunity alone.

Finally, Plaintiff will be unable to demonstrate damages as a result of any action by Defendants. Plaintiff alleges Defendants' actions caused her: (i) mental and emotional distress which *affected* her ability to complete her educational requirements; and (ii) that this incident on her record will affect her ability to get a job and attend graduate school. Complaint, ¶ 56-57. First, Ms. Meisse graduated as planned with a final GPA perfectly consistent with the GPA she earned during her first two years in the nursing program. Exhibit 1 (Temple/Meisse 00038-39). Thus, she will be unable to demonstrate the averment in ¶ 57 of her Complaint. With respect to Ms. Meisse's alleged abstract desire to attend graduate school, the Third Circuit has "strongly suggested that the right to *continued graduate education* is not protected by substantive due process." *Manning v. Temple U.*, 157 F. App'x 509, 514 (3d Cir. 2005) (emphasis added) (other citations omitted). The Third Circuit has also ruled, "The possible loss of future employment opportunities is patently insufficient to satisfy the requirement imposed by *Paul* that a liberty interest requires more than mere injury to reputation." *Clark v. Twp. of Falls*, 890 F.2d 611, 620 (3d Cir. 1989). Finally, Temple witness Stephanie Ives, Ed. Associate Vice President and Dean of Students for Temple University, will testify that Temple only sends students' disciplinary information to third parties

upon a specific request and only if a student grants permission. Dean Ives will also testify that as of the time of this filing, Temple has not received any such request for Ms. Meisse.

Defendants' Documents: Defendants are attaching for the Court's reference select documents from their First Document Production to Plaintiff (Temple/Meisse 00001-107), including the documents specifically referenced above. *See* Exhibits 1-9 hereto.

## 2.      Informal Disclosures

The Parties have made their Rule 26(a)(1) disclosures. Defendants produced the documents identified in their Self-Executing Disclosures and bates stamped Temple/Meisse 00001-00107.

Plaintiff has not yet produced any documents.

## 3.      Formal Discovery

(a)      Defendants already propounded formal written discovery and intend to conduct depositions. Plaintiff plans to serve formal written discovery requests by January 15, 2023.

(b)      Defendants anticipate deposing Plaintiff and, depending on Plaintiff's testimony and documents Defendants may obtain by subpoenaing third parties, may take additional depositions.

(c)      Plaintiff anticipates taking two or three depositions.

(d)      Defendants intend to obtain third party discovery from the other schools Plaintiff attended, Plaintiff's former employers and any relevant state and federal agencies.

(e)      Neither Defendants nor Plaintiff anticipate any discovery disputes at this time.

(f)      The parties have agreed on the following deadlines:

Fact discovery: All factual discovery shall be completed by March 15, 2023.

Plaintiff's expert reports, if any, shall be produced by April 15, 2023.

Defendants' expert reports, if any, shall be produced by May 15, 2023.

Dispositive motions shall be filed by June 15, 2023.

**Electronic Discovery**

Neither Defendants no Plaintiff anticipate there will be problems with electronic discovery. The parties will work together to resolve any issues that arise before seeking redress with the court.

**Expert Witness Disclosures**

The parties propose that expert discovery (including exchange of expert witness reports) be concluded by dates set forth above.

**4.      Insurance Coverage**

Temple University maintains a large self-insured retention and insurance above the retention and has more than ample assets to satisfy any judgment that plaintiff could possibly obtain.

**5.      Settlement or Resolution**

The Parties believe it would be helpful to schedule an early settlement conference.

**Trial date**

The parties request that the Court order a date certain for trial, because of the difficulty of scheduling University faculty for a trial.

**6.      Length of trial**

Approximately one week.

**7.      Other matters**

None.

9

**THE LAW OFFICE OF KEITH ALTMAN**

/s/Keith Altman
KEITH ALTMAN
33228 W. 12 Mile Rd, Suite 375
Farmington Hills, Michigan 48224
(248) 987-8929
keithaltman@kaltmanlaw.com


**Attorney for Plaintiff**
**Rebecca Meisse**

**HAMBURG LAW GROUP, PLLC**

/s/ Neil J. Hamburg
NEIL J. HAMBURG
KAY E. SICKLES
1 Franklin Town Blvd., Suite1106
Philadelphia, PA 19103
(215) 858-2225/(484) 343-2741
hamburgnj@hamburglawgroup.com
sickleske@hamburglawgroup.com

**Attorneys for Defendants**
**Temple University, Krystal N. Allen,**
**Amanda J. Fish and Stephanie Ives-Bartow**

## CERTIFICATE OF SERVICE

I, Kay Sickles, hereby certify that has been filed electronically and will be available for viewing and downloading from the Court's Electronic Filing System and that I served Plaintiff a copy of by email on:

Dated:  November 22, 2022                     /s/ Kay E. Sickles
                                              KAY E. SICKLES