# EXHIBIT 3

# TEMPLE UNIVERSITY
## BOARD OF TRUSTEES
## POLICIES AND PROCEDURES MANUAL

**Title:**                          Student Conduct Code
**Policy Number:**                  03.70.12
**Issuing Authority:**              Office of the President
**Responsible Officer:**            Provost

**Date Created:**                   January 1, 2004
**Date Last Amended/Reviewed:**     May 2017
**Date Scheduled for Review:**      Spring Semester 2020
**Reviewing Office:**               Office of Student Conduct and Community Standards

**Scope of Policy and Rationale:**

**INTRODUCTION**

Temple University is a community of scholars in which freedom of inquiry and freedom of expression are valued.

### ACADEMIC HONOR CODE

Temple University believes strongly in academic honesty and integrity.  Essential to intellectual growth and the university's core educational mission is the development of independent thought and respect for the thoughts of others.  Academic honesty fosters this independence and respect.  Academic dishonesty undermines the university's mission and purpose and devalues the work of all members of the Temple community.  Every member of the university community is responsible for upholding the highest standards of honesty at all times.  Students, as members of the community, are responsible for adhering to the principles of academic honesty and integrity.

### BEHAVIORAL EXPECTATIONS

Important aspects of attending the university as a student are having respect for the rights of others in the community, conducting one's self in a manner that is compatible with the university's mission and taking responsibility for one's actions.

Temple University Student Government has adopted a unity statement that reflects the values of the diverse Temple community, by which all students are expected to abide.

1

**TEMPLE/Meisse 00001**

*"As Temple Owls, we respect all members of our university and local community regardless of: race, ethnicity, sex, gender, identity, sexual orientation, age, religion, socioeconomic status, veteran status, political affiliation, or (dis)ability. By providing a wealth of life experience, this diversity is our greatest strength.*

*This diversity serves as an avenue to engage in educational discourse. Based on this premise we welcome those who are different from us to challenge and expand our worldview. As an establishment founded on scholastic pursuits, we recognize that there is no place for ignorance or violence on our campus.*

*We strive to understand all cultures and experiences as well as empower our peers to unite into a cohesive student body that aims to break down socially constructed barriers in order to learn together, grow together, and fly together."*

To fulfill its functions of promoting and disseminating knowledge, the university has authority and responsibility for maintaining order and for taking appropriate action, including, without limitation, exclusion of those who disrupt the educational process. University authority should not be used merely to duplicate the function of general laws. Only when the university's interests as an academic community are substantially involved should the special authority of the university be asserted.

Responsibility for the enforcement of the rules of the university rests with all the members of the Temple community. University rules should serve as a guide for high personal standards. It is the student's responsibility to:

1.    Foster an environment conducive to continued intellectual and educational stimulation within the university free from unlawful harassment by other members of the community;

2.    Foster academic honesty and an environment that encourages intellectual growth and the development of independent thought;

3.    Foster the maintenance of physical and mental health, the safety and welfare of each member of the community; and

4.    Respect the rights of others.

These general behavioral expectations and the university Student Conduct Code ("Student Code") represent a reasonable regulation of student conduct, but the student should be as free as possible from imposed limitations that have no direct relevance to their education and to their obligations and responsibilities as a member of the university community.

Temple University values the rights of students, faculty, and staff to express themselves. A university, by its very mission of education, provides the space for ideas to be tested, views to be challenged, and established wisdom to be questioned. In doing so, students gain valuable skills, learn to hone their arguments, and think rigorously. This tradition of

TEMPLE/Meisse 00002

passionate discourse is a time-honored one, and remains critical to this day.  As such, nothing in this code shall be construed as abridging the First Amendment rights of any member of the University community.

The provisions of the Student Code should be interpreted consistent with this Introduction, and in accordance with all recognized student rights and privileges.

## ARTICLE I: DEFINITIONS

1. The term "**Accused Student**" means any Student accused of violating this Student Code.

2. The term "**Appellate Board**" means any person or persons, including a faculty member, staff member, student, and/or third-party neutral, authorized by the University Code Administrator to consider an appeal from a Student Conduct Board's decision.

3. The term "**Chairperson**" means any person or persons authorized by the University Code Administrator to chair a Student Conduct Board.

4. The term "**Complainant**" means any person who files the initial report leading to the charges.

5. The term "**faculty member**" means any person hired by the university to conduct classroom or teaching activities or who is otherwise considered by the university to be a member of its faculty.

6. The term "**impact statements**" means any statement regarding the impact of the events. The presentation of **impact statements** occurs at a time to be determined by the Student Conduct Board Chairperson.

7. The term "**member of the university community**" includes any person who is a student, faculty member, or any other person employed by or affiliated with the university.  A person's status in a particular situation shall be determined by the University Code Administrator.

8. The term **"Personal Advisor"** means any person asked by the Accused Student, Complainant, or a witness to assist the Student in the student conduct process.  The Personal Advisor is an inactive participant.  Personal Advisors are not permitted to directly address the Student Conduct Board during Student Conduct Board hearings.  The Personal Advisor may guide the person they are advising through the student conduct process, help them formulate questions, and help the person understand the Student Code. Accused Students or Complainants may choose to have, but are not limited to faculty, university staff, or an attorney as their Personal Advisor.

3

**TEMPLE/Meisse 00003**

9. The term "**policy**" means the written regulations of the university as found in, but not limited to, the Student Code, Residence Life publications and agreements, the university policies web page at http://policies.temple.edu, and Graduate/Undergraduate Bulletins.

10. The term **"Process Review Meeting"** refers to the initial meeting, following the student's receipt of the charge notice, between the Student and a Student Conduct Administrator.  This meeting is designed to help the Student better understand the student conduct process.  A Complainant, and/or victim shall also have the right to a Process Review Meeting.

11. "**SCCS**" means the Office of Student Conduct and Community Standards.

12. The term "**Student**" includes all persons taking courses at the university, either full-time or part-time, including but not limited to:
a. Persons who withdraw after allegedly violating the Student Code;
b. Persons who are not officially enrolled for a particular term but who have a continuing relationship with the university;
c. Persons who have been notified of their acceptance to the university;
d. Persons who are living in university residence halls, although not enrolled in this institution; or
e. Persons participating in study abroad programs.

13. The term "**Student Conduct Administrator**" means a university official authorized by the University Code Administrator to manage the disciplinary process.  The term also includes the Student Conduct Administrator's designee.  The Student Conduct Administrator may serve simultaneously as the Student Conduct Administrator and the sole member or one of the members of the Student Conduct Board.

14. The term "**Student Conduct Board**" means any person or persons, including a faculty member, staff member, student, and/or third-party neutral, authorized by the University Code Administrator to determine whether a Student has violated the Student Code and to recommend sanctions that may be imposed when a rules violation has been committed.  A Student Conduct Board includes Residential Life Boards, as well as those convened by the SCCS.

15. The term "**student organization**" means any number of persons who have complied with the formal requirements for university recognition.

16. The term "**University**" means Temple University- Of The Commonwealth System of Higher Education.

17. The term "**University Code Administrator**" is that person designated by the university president to be responsible for the administration of the Student Code.  The term also includes the University Code Administrator's designee. The University Code Administrator may designate different persons to carry out different functions under the Student Code.

TEMPLE/Meisse 00004

18. The term "**university official**" includes any person employed by or acting on behalf of the university, performing assigned responsibilities.

19. The term "**university premises**" includes all land, buildings, facilities, and other property in the possession of or owned, used, or controlled by the university (including adjacent streets and sidewalks).


## ARTICLE II: STUDENT CODE AUTHORITY

1. The Student Conduct Administrator shall determine the composition of Student Conduct Boards and Appellate Boards and determine which Student Conduct Board and Appellate Board shall be authorized to hear each matter.

2. The University Code Administrator shall develop policies and procedures for the administration of the student conduct system that are consistent with the provisions of the Student Code.

3. Decisions made by a Student Conduct Board and sanctions imposed by the University Code Administrator shall be final unless an appeal is granted.

## ARTICLE III: PROSCRIBED CONDUCT

### A. Jurisdiction of the Student Code

1. The Student Code shall apply to conduct that occurs:

>    A. on university premises;
>    B. within 500 yards of university premises;
>    C. on shuttle buses and other vehicles owned, used by or under the control of the
>        university; or
>    D. at university sponsored activities.

>    The Student Code may also apply to off-campus incidents or conduct that adversely
>    affect the university community and/or the pursuit of its objectives.

2. Each Student shall be responsible for their conduct from the time of application for admission through the actual awarding of a degree, even though conduct may occur before classes begin or after classes end, as well as during the academic year and during periods between terms of actual enrollment (and even if their conduct is not discovered until after a degree is awarded).

3. The Student Code shall apply to a Student's conduct even if the Student withdraws from school while a disciplinary matter is pending. The University Code Administrator

**TEMPLE/Meisse 00005**

shall decide whether the Student Code shall be applied to conduct occurring off campus, on a case-by-case basis, in their sole discretion.

4. Subject to review and/or approval by the University President or his or her designee, the Schools of Medicine, Law, Pharmacy, Dentistry, Podiatric Medicine and the College of Health Professions and Social Work may adopt their own student codes in order to provide their Students with guidelines concerning the additional standards required of Students enrolled in those schools.

These student codes:
    A. Must be consistent with this Student Code;
    B. Must be in writing and published or disseminated widely at the school; and
    C. Must be filed with the Student Conduct Administrator.

5. Violations of standards of academic conduct may result in either faculty-imposed academic sanctions or Student Code sanctions. Faculty members who feel that a grade reduction or a failing grade for an assignment, test/examination or course is a sufficient sanction need not refer cases to the SCCS. Such actions by a faculty member may be subject to appeal pursuant to school, college, and/or university policies. Sanctions other than a reduced or failing grade may be imposed only following a hearing.

## B. Interim Measures

In certain circumstances, the University Code Administrator may impose a university or University Housing suspension (as defined in Article IV, D) or other interim measures prior to the Student Conduct Board Hearing.

1. Interim measures may be imposed only when the University Code Administrator determines, in consultation with university officials as appropriate, that the interim measure is necessary:

    A. to ensure the safety and well-being of members of the university community or preservation of university property; or

    B. to ensure the Student's own safety and well-being; or

    C. if the Student poses an ongoing threat of, disruption of, or interference with, the normal operations of the university.

2. Interim measures include the following:

    A.      Interim Suspension: This measure is used when the University Code Administrator determines there is a need to remove a Student from campus and university activities. The Student shall be denied access to the residence halls, the university premises (including classes), and all other university activities or privileges for which the Student might otherwise be eligible. A Student on interim

6

TEMPLE/Meisse 00006

suspension may not make academic progress nor earn academic credit in any course at the University during the period of suspension.

B.      Interim Exclusion - This measure is used when the University Code Administrator determines there is a need to deny access to all or a portion of university property, buildings, and/or activities.  The parameters and timeframe of the exclusion are set by the University Code Administrator.

C.      Interim No Contact Order - This measure is an order to cease and desist from any intentional contact, direct or indirect, with one or more designated persons or group(s) through any means, including personal contact, electronic, social media interaction, email, text, telephone, through a third party, or by any other means.

D.      Interim Class Exclusion - This measure is used if the University Code Administrator determines that there is a need to deny attendance of and/or participation in a University course.  If a student is allowed to return to the class, the University will work with the student to address any missed content.

3. The Student should be notified in writing of the interim measure, its terms, and the reasons for the interim measure.  The notice should specify the Student's right to request a meeting at which the Student may show cause why the interim measure is not necessary. The interim measure and any review of this status does not replace the regular hearing process.

## C. Conduct—Rules and Regulations

Any Student or student organization found to have committed or to have attempted to commit the following is subject to the disciplinary sanctions outlined in Article IV, D:

1.  Academic dishonesty and impropriety:

    A.  Plagiarism includes, but is not limited to, the use, by paraphrase or direct quotation, of the published or unpublished work of another person without full and clear acknowledgment. It also includes the unacknowledged use of materials prepared by another person or agency engaged in the selling or distribution of term papers or other academic materials.

    B.  Cheating includes, but is not limited to: (1) use of any unauthorized assistance in taking quizzes, tests, or examinations; (2) use of sources beyond those authorized by the instructor in writing papers, preparing reports, solving problems, or carrying out other assignments; (3) the acquisition, without permission, of tests or other academic material belonging to a member of the university faculty or staff; (4) engaging in any behavior specifically prohibited by a faculty member in the course syllabus, assignment, or class discussion; (5) or otherwise engaging in behavior that gives the Student an unfair

7

TEMPLE/Meisse 00007

academic advantage including, but not limited to, fabrication of data or sources, resubmitting work already submitted for another academic requirement without prior authorization, or other similar behavior.

    C. Facilitating, procuring, or encouraging another person to engage in plagiarism or cheating.

2. Disruption or obstruction of university activities, on or off campus, including, but not limited to, teaching, research, administration, disciplinary proceedings, and its public service functions , or authorized non-university activities where those non-university activities occur on university premises.

3. Intentional or reckless physical harm to another person.

4. Written, verbal, physical, or other conduct that intentionally or recklessly places another person in reasonable fear of:

    A. Bodily harm to that person;
    B. Bodily harm to a third party; or
    C. Damage to property.

5. Violation of the University Policy on Preventing and Addressing Sexual Misconduct 04.82.02 which may be found on the university's policies and procedures webpage at http://policies.temple.edu.  Sexual misconduct includes sexual assault, domestic violence, dating violence, stalking, and sexual exploitation.

    A.    Sexual assault includes any of the following:

        (a) Any intentional, unconsented touching, or threat or attempt thereof, of: (i) an intimate bodily part of another person, such as a sexual organ, buttocks or breast; (ii) any bodily part of another person with a sexual organ; or (iii) any part of another person's body with the intent of accomplishing a sexual act; or

        (b) Disrobing of another person without the other's consent or purposeful exposure of one's genitals to another without the other's consent; or

        (c) Forcing, or attempting to force, another person to engage in sexual activity of any kind without their consent.

*Consent in sexual activity is defined in Pennsylvania in accordance with its plain and common meaning.  Consent means words or actions that show a knowing and voluntary agreement to engage in mutually agreed sexual activity.  Consent must be ongoing through sexual activity and can be revoked at any time.   Assent (an affirmative statement or action) shall not constitute consent if it is given by a person who is unable to make a reasonable judgment concerning the nature or harmfulness of the activity because of their intoxication, unconsciousness, youth, mental*

8

*deficiency or incapacity, or if the assent is the product of threat or coercion.  Consent to prior sexual activities does not constitute consent to future acts.*

B.      Domestic Violence includes but is not limited to violence committed by a current or former spouse or intimate partner of the victim, by a person with whom the victim shares a child in common, by a person who is cohabitating with or who has cohabitated with the victim as a spouse, by a person similarly situated to a spouse of the victim, by any other person against an adult or youth victim who is protected from that person's acts under the domestic or family violence laws of the Commonwealth of Pennsylvania, or as "domestic violence" is otherwise defined under the laws of the Commonwealth of Pennsylvania.

C.      Dating Violence means violence committed by a person—

        (a) who is or has been in a social relationship of a romantic or intimate nature with the victim; and

        (b) where the existence of such a relationship shall be determined based on the victim's statement and with a consideration of the following factors:

                (i) The length of the relationship.
                (ii) The type of relationship.
                (iii) The frequency of interaction between the persons involved in the relationship.

        Dating violence includes, but it not limited to, sexual or physical abuse or the threat of such abuse.

D.      Stalking means engaging in a course of conduct directed at a specific person that would cause a reasonable person to fear for their safety or the safety of others; or suffer severe emotional distress; or as "stalking" is otherwise defined by the law of the Commonwealth of Pennsylvania.  One engages in an impermissible course of conduct if one engages in two or more acts that include, but are not limited to, acts in which the stalker directly, indirectly, or through third parties, by any action, method, device or means, follows, monitors, observes, surveils, threatens, or communicates about a person in a way prohibited as described above, or interferes with a person's property.

E.      Sexual Exploitation includes, but is not limited to: non-consensual visual or audio recording of sexual activity; non-consensual display or distribution of photos, images or information of an individual's sexual activity or intimate body parts; non-consensual voyeurism; prostituting another person; or knowingly transmitting sexually transmitted infections (STI) or sexually transmitted diseases (STD) without disclosing that one is infected with an STI or STD.

*Temple University seeks to encourage and sustain an academic environment that both respects individual freedom and promotes the health, safety and welfare of all members*

9

*of its community. Because Temple University places a high priority on student health and safety, those who report Sexual Misconduct or participate as a complainant, victim, or a witness in Sexual Misconduct investigations, or who seek medical assistance for themselves or another, will not be subject to disciplinary sanctions for their consumption of alcohol and/or other substances.*

6. Violation of the University Policy on Sexual Harassment 04.82.01 which may be found on the university's policies and procedures webpage at http://policies.temple.edu.  Sexual harassment, as defined in the applicable policy, includes any unwelcome conduct of a sexual nature, including sexual advances, requests for sexual favors or other verbal or physical conduct of a sexual or gender-based nature.

7. Conduct that causes severe or pervasive distress by (a) repeated communications that the Student knows or should know are unwanted or (b) where the Student acts with the intent to harass

8. Intentional or reckless damage to or destruction of University property or private property.

9. Theft of University property or private property.

10. Provision of false or misleading information, verbally or in writing, to the university or -university personnel. This includes, but is not limited to:

      A. Forgery, fraud (including payroll fraud), bribery, alteration, or misuse of University documents, records;

      B. Providing false or misleading information during a disciplinary proceeding or investigation related to potential policy violations; or

      C. Representing oneself as another member of the university community.

11.  Use of another person's identity, password, identification number, university identification card or any other form of identification.

12. Hazing or any act that endangers the mental or physical health or safety of a person, embarrasses, frightens, or degrades a person or that destroys or removes public or private property, for the purpose of initiation, admission into, or affiliation with, or as a condition for continued membership, in a group, organization or team. The express or implied consent of the victim will not be a defense.  Except for the victim, apathy or acquiescence in the presence of hazing by any Student is not a neutral act; it is a violation of this rule.

13. Failure to comply with directions of university officials or law enforcement officers acting in performance of their duties and/or failure to identify oneself to these persons when requested to do so.

**TEMPLE/Meisse 00010**

14. Unauthorized possession, duplication or use of keys or swipe cards that are used for electronic access to any university premises, or unauthorized entry to or use of university premises.

15. Violation of any university policy, rule, or regulation published in hard copy or available electronically on the university website.

16. Violation of any federal, state or local law.

17. Unlawful use, possession, manufacture, or distribution of alcoholic beverages (except as expressly permitted by university regulations), or public intoxication. Alcoholic beverages may not, in any circumstance, be used, possessed, manufactured, or distributed by any person under twenty-one (21) years of age.  It is also a violation to possess and/or use false forms of identification to obtain alcoholic beverages.  Students 21 years of age and older may be in violation of the University's alcohol policy for, among other things, the public possession of an open container, public intoxication, and the distribution of alcohol to anyone under the age of 21.

*The university strongly encourages students to call Campus Safety Services for medical assistance for themselves or for other individuals who are dangerously under the influence of drugs or alcohol. No student seeking medical treatment for the effects of drug or alcohol use will be subject to university discipline for violations pertaining to drug or alcohol use that are outlined in the Student Code. Medical amnesty does not apply to disciplinary action relating to any other criminal activity including but not limited to assault, property damage, or the presence of or distribution of other substances.  This medical amnesty will be granted to both the intoxicated student and to the student seeking medical assistance for the intoxicated student; however, the intoxicated student will be required to participate in the university's Drug and Alcohol Education Program in order to receive medical amnesty.*

18. The illegal or unauthorized use, possession, cultivation, distribution, manufacture or sale of any drug(s), including prescribed medication.

19. Intoxication due to the use or abuse of solvents, aerosols or propellants.

20. Administration of drugs or other intoxicants to another person, without their knowledge, causing them to become impaired.

21. Use, possession, sale or storage of articles and substances that endanger a person's health and/or safety in or on university premises. This includes, but is not limited to, firearms (e.g. guns, pistols, rifles, stun guns, air rifles, pellet guns, etc.), fireworks, knives, weapons, ammunition, gunpowder, explosives, or other material containing flammable substances, as well as replicas of any such articles or substances. The university will confiscate any such articles. Any student found in possession of a firearm will receive an interim suspension from Temple University pending the outcome of the student conduct process.

11

Firearms and other dangerous weapons are strictly prohibited in or on university facilities. This prohibition applies to all persons, even those who possess a license to carry such weapons, except for authorized Campus Safety Services and other law enforcement personnel performing official functions.

22. Any lewd or indecent act, including public urination, which the Student knows or reasonably should know, is likely to be observed by others.

23. Disorderly conduct that causes a public inconvenience, disruption, or creates a risk thereof. Acts that may constitute disorderly conduct are limited to the following:
    A.  Engaging in fighting or threatening or violent behavior;
    B.  Making unreasonable or excessive noise; or
    C.  Creating a hazardous or physically offensive condition.

24. Abuse of the student conduct process, including, but not limited to:

    A. The Student's failure to comply with the notice to appear for any preliminary investigative meeting, Process Review meeting, or hearing as part of the student conduct process;
    B. Attempting to discourage an individual's participation in, or use of the student conduct process, including but not limited to, retaliation of any kind against any individual filing a complaint or participating in a disciplinary proceeding;
    C. Attempting to influence the impartiality of a member of a Student Conduct Board prior to, during, and/or after a Student Conduct Board Hearing;
    D. Harassment (verbal or physical) and/or intimidation of a member of a Student Conduct Board prior to, during, and/or after a Student Conduct Board Hearing;
    E. Failure to comply with the sanction(s) imposed under the Student Conduct Code;
    F. Influencing or attempting to influence another person to commit an abuse of the student conduct process.

25.  Operating an unregistered student organization, including fraternities/sororities and sport clubs, organizing or sponsoring any event or activity that promotes or gives the impression or appearance that the unregistered group is a viable organization. *Students should contact the Student Activities Office or Campus Recreation to ensure that a student organization is in good standing.*


## ARTICLE IV: STUDENT CONDUCT CODE PROCEDURES

### A. Nature of Proceedings

1. Anyone may file a complaint regarding student conduct. A complaint shall be prepared in writing and directed to the SCCS (http://www.temple.edu/studentaffairs/student-

TEMPLE/Meisse 00012

services/student-conduct-community-standards.asp).  Complaints made directly to other
campus resources (Campus Safety Services, University Housing and Residential Life, the
Wellness Resource Center, Title IX Coordinator, Faculty, etc.) may be forwarded to the
SCCS for review.  Any complaint should be submitted as soon as possible after the event
takes place.

2. The Student Conduct Administrator may conduct an investigation to determine if the
complaint has merit and/or if it can be disposed of administratively by mutual consent of
the parties involved on a basis acceptable to the Student Conduct Administrator. Such
disposition shall be final and there shall be no subsequent proceedings.

3. The Student Conduct Administrator is responsible for determining whether to charge a
Student or a Student Organization with a violation of the Student Code.  Notification of
conduct charges will be sent by e-mail to the Accused Student's official Temple
University e-mail address.  In the case of a Student Organization, the notice will be sent
to the organization's elected student President's official Temple University e-mail
address.  In sexual assault, domestic violence, dating violence, sexual exploitation and
stalking cases, the notification of conduct charges will be sent by e-mail to the victim's
official Temple University e-mail address.  Reasonable efforts will be made to schedule a
Student Conduct Board Hearing not more than 30 business days after the Student or the
Student Organization has been notified. Time limits for scheduling may be extended at
the discretion of the Student Conduct Administrator.

4. No Student against whom charges have been filed will be permitted to graduate until
the charges are resolved.

5. If the Accused Student or Accused Student Organization admits violating university
rules, but they do not agree to the sanction, a subsequent hearing process to determine
sanctions will be held.

6.  All notifications under the Student Code will be sent by e-mail to the student's official
Temple University e-mail address.

7.  The Student Conduct Administrator, for good cause shown and in the Student Conduct
Administrator's sole discretion, may grant brief reasonable extensions of the deadlines set
forth in the Code.

**B. Process Review Meeting**

1. The Process Review Meeting is a non-adversarial meeting between a Student Conduct
Administrator and one of the following; an Accused Student, Student Organization, a
Complainant, or a victim. The purpose is to educate the participants about the student
conduct process.

2.  Notification of the Process Review Meeting will include the information needed to
schedule a meeting accompanied by the written notification of the charges, a summary of

TEMPLE/Meisse 00013

the allegations which support the charges, and information regarding disciplinary hearing procedures and the Student Code. The notification also will inform the Accused Student or Student Organization that a Personal Advisor can be present at the Process Review Meeting in a non-active role. The Accused Student or Student Organization is required to attend this meeting. If the Accused Student or Student Organization does not attend a Process Review Meeting the disciplinary process will continue.

3. The Accused Student or Student Organization and a Student Conduct Administrator will meet to review the charges, the allegations against the Accused Student or Student Organization, the possible sanctions for the charges, the hearing process options and procedures, and any available information that will be presented at the hearing.

4. The Complainant[1] in a student conduct case is also entitled to a Process Review Meeting. The Complainant and a Student Conduct Administrator will meet to review the charges and allegations against the Accused Student or Student Organization, the possible sanctions for the charges, the hearing process options and procedures, and any available information that will be presented at the hearing. The Complainant is permitted to have a Personal Advisor present with them during this meeting. If the Complainant chooses to not participate in the Process Review Meeting the disciplinary process will continue.

5. If the Student Conduct Administrator concludes, based on the Process Review Meeting, that there is no basis for charges against the Student or Student Organization, they may, at any stage of the proceedings, withdraw the charges.

6. The Student Conduct Administrator may utilize the Process Review Meeting to determine if there is enough information to warrant the use of alternative resolution options (e.g., conflict education, mediation). This will only be offered as a solution if all parties involved agree to the terms of the alternative resolution outlined by the Student Conduct Administrator. If the alternative resolution is successful and all terms are completed, the disciplinary charges will be dismissed. If the alternative resolution is not successful, the disciplinary charges may be resolved through the ordinary conduct process. Alternative resolutions are not available in incidents involving an alleged violation of the university policy on Preventing and Addressing Sexual Misconduct, or Article III.C.5.

7. The Student Conduct Administrator will determine the appropriate hearing process. In determining which hearing body is appropriate, the Student Conduct Administrator will consider the severity of the potential sanction and the complexity of the factual dispute.

## C. Student Conduct Board Hearings

Student Conduct Board Hearings shall be conducted according to the following guidelines:

---

[1] In the event a victim of sexual assault, dating or domestic violence, stalking, or sexual exploitation, as defined under Article III.C.5 of this Code, is not also the Complainant in a case, the victim will be afforded the same procedural rights as a Complainant.

TEMPLE/Meisse 00014

1. Formal rules of process, procedure, and/or technical rules of evidence, such as are applied in criminal or civil court, are not used in Student Conduct Board hearings.

2. Student Conduct Board Hearings shall be conducted in private. The Accused Student, Student Organization, Complainant, and their Personal Advisors, if any, shall be allowed to attend the entire portion of the Student Conduct Board Hearing (excluding deliberations). Admission of any other person to the Student Conduct Board Hearing shall be at the discretion of the Student Conduct Administrator.

3. In the event there are multiple charges stemming from one incident or multiple related incidents, the Student Conduct Administrator, in the Student Conduct Administrator's sole discretion and in the interests of fairness and efficiency, may schedule the matters for one or multiple hearings and hear them in whatever order is appropriate given the circumstances.

4. The Accused Student, Student Organization, the Complainant, and all university witnesses will be contacted with their Student Conduct Board Hearing date, time, and location via their official Temple University e-mail address if the individual is a member of the University Community.

5. The Accused Student, Student Organization, and the Complainant may challenge the selection of the Chairperson for good cause. The name of the Chairperson will be included in their Student Conduct Board Hearing notification and the challenge must be received at least 72 hours prior to the Student Conduct Board Hearing date.  The Student Conduct Administrator will accept or reject the challenge as they deem appropriate.

6. At the commencement of the hearing, the Accused Student, Student Organization, and the Complainant may challenge, for good cause, the membership of any student, faculty member, staff member, or third-party neutral on the Student Conduct Board, if any. The Chairperson will accept or reject the challenges as they deem appropriate.

7. In Student Conduct Board Hearings involving more than one Accused Student, Complainant, or Student Organization, the Student Conduct Administrator, in their discretion, may permit the Student Conduct Board hearing to be conducted either separately or jointly.

8. The Accused Student, Student Organization, and the Complainant have the right to be assisted by any Personal Advisor they choose, at their own expense.  The Accused Student, Student Organization, and the Complainant also may have a parent or spouse present at all hearings.  The Accused Student, Student Organization, and the Complainant are responsible for presenting their own information in any Student Conduct Board hearings.  A Student should select as a

15

Personal Advisor a person whose schedule allows attendance at the scheduled date and time for the Student Conduct Board Hearing.  Delays will not normally be allowed due to the scheduling conflicts of a Personal Advisor.  The Accused Student, Student Organization, and the Complainant must notify the Student Conduct Administrator of the name of any parent, spouse or Personal Advisor at least two business days prior to the hearing.  If a student fails to notify the Student Conduct Administrator of the name of any parent, spouse, or Personal Advisor within the parameters outlined above, the individual's participation will be at the discretion of the Student Conduct Administrator.

9.  The Accused Student, Student Organization, the Complainant, and the Student Conduct Administrator may present evidence, including arranging for witnesses to present pertinent information, to the Student Conduct Board. The Student Conduct Administrator will try to arrange the attendance of possible witnesses who are members of the university community, if reasonably possible, and who are identified by the Accused Student, Student Organization, and/or Complainant at least two business days prior to the Student Conduct Board Hearing.  All witness notifications will be sent to members of the university community via their official Temple University e-mail address.  Witnesses will provide information to and answer questions from the Student Conduct Board. Questions may be suggested by the Accused Student, Student Organization, and/or Complainant to be answered by each other or by other witnesses. This will be conducted by the Student Conduct Board with such questions directed to the Chairperson, rather than to the witness directly. This method is used to preserve the educational character of the hearing and to avoid creation of an adversarial environment. Questions of whether potential information will be received shall be resolved at the discretion of the Chairperson of the Student Conduct Board. Ultimately, it is the responsibility of the Accused Student to ensure that witnesses they would like to appear on their behalf, are aware of the date, time, and location of the scheduled hearing.  The SCCS will make reasonable accommodations for the appearance of any witnesses at a scheduled hearing, including but not limited to, phone, and video conferencing.

10. The Accused Student or Student Organization will not be compelled to testify, and no inference may be drawn from the Accused Student's or Student Organization's failure to testify.  No person will be compelled to give testimony that could incriminate themselves.

11. Pertinent records, exhibits, and written statements (including impact statements during the sanctioning phase of the hearing, if any) may be accepted as information for consideration by a Student Conduct Board at the discretion of the Chairperson.  Evidence of the Accused Student's or Student Organization's good character will generally only be accepted during any sanctioning phase of the hearing.

TEMPLE/Meisse 00016

12. All procedural questions will be resolved by the Chairperson of the Student Conduct Board, in consultation with appropriate individuals, including the Student Conduct Administrator.

13. At the commencement of all hearings, the Student Conduct Administrator will remind all hearing participants that they are obligated to provide accurate and truthful information to the Student Conduct Board.  The Student Conduct Board will conduct the questioning and evaluate the testimony and any other evidence. The Student Conduct Board will determine whether an Accused Student or Student Organization has violated the Student Code. If the Student Conduct Board determines that a student has violated the Student Code, the Student Conduct Board will recommend a sanction to the University Code Administrator. The Student Conduct Board, if comprised of more than one person, will reach its decision by a simple majority vote. In the event of a tie vote among members of the Student Conduct Board, a finding of no violation shall be made.

14. The Student Conduct Board's determination shall be made on the basis of whether it is more likely than not that the Accused Student or Student Organization violated the Student Code.

15. There shall be a single record, which may include an audio recording, of all Student Conduct Board hearings before a Student Conduct Board.  Deliberations shall not be recorded. The record shall be the property of the university.

16. The Accused Student's or Student Organization's appearance at all stages of the student conduct process is mandatory.  The Accused Student, Student Organization, the Complainant, and the University will be expected to have all witnesses and evidence present at the scheduled time of the hearing.  Failure of the Accused Student, Student Organization, Complainant, or of university personnel to appear may result in the hearing being held in their absence and a decision being reached on the charges.  When the Student Conduct Administrator provides evidence that they have sent the Student Conduct Board Hearing notification through official Temple University e-mail addresses as shown in University records, failure to appear for a meeting or hearing cannot be justified by a claim of non-receipt of notice.  It is the responsibility of Students to notify the University immediately of any change of address or make the appropriate change through TUPortal.

17. As determined in the sole judgment of the Student Conduct Administrator, the Student Conduct Board may accommodate concerns for the personal safety, well-being, and/or fears of confrontation of the Accused Student, Student Organization, Complainant, and/or other witnesses during the hearing by: providing separate facilities, using a visual screen, and/or permitting participation by telephone, videophone, video conferencing, video recording, or other means.

TEMPLE/Meisse 00017

18. Faculty or administration may make recommendations to the Student Conduct Board concerning sanctions if an Accused Student or Student Organization is found in violation of the Student Code.

19. The Student Conduct Board will make its findings and recommendations upon the conclusion of its deliberations.

20. The hearing is then concluded.

21. In each case in which a Student Conduct Board determines that an Accused Student and/or student organization have violated the Student Code, the Student Conduct Board shall recommend sanctions to the University Code Administrator. The recommendation of the Student Conduct Board shall be considered by the University Code Administrator in determining and imposing sanctions; however, the sanctions shall be determined and imposed by the University Code Administrator and the University Code Administrator is not limited to sanctions recommended by members of the Student Conduct Board.

22. Following the Student Conduct Board hearing, the Student Conduct Administrator shall advise the Accused Student, group and/or organization in writing of the determination and of the sanction(s) imposed, if any, along with instructions regarding appeals (Article IV, E).

23. Where the conduct matter involved a charge of a violent crime, as defined by the Family Educational Rights and Privacy Act ("FERPA"), the University Code Administrator will also advise the accuser of the final outcome.

24. Where the conduct matter involved a charge of sexual assault, domestic violence, dating violence, stalking, or sexual exploitation, as defined under Article III (C) 5 of the code, the victim will be notified in writing, at the same time as the Accused Student, of:

   a. The outcome of any disciplinary proceeding arising from the accusation(s) and the rationale for the decision;
   b. The procedures to appeal the outcome, if so desired;
   c. Any changes to the outcome prior to the outcome becoming final; and
   d. The final determination and sanction, if any, following any appeal or when the appeal period elapses.

25. Where the conduct matter involves a Student Organization, notification of the hearing outcome will be provided to the appropriate University official advising the student group as well as the national headquarters for the organization if one exists.

**D. Sanctions**

18

TEMPLE/Meisse 00018

1. The following sanctions may be imposed upon any Student found to have violated the Student Code:

    **a. Letter of Reprimand**—A notice in writing to the Student that will remain with their discipline record.

    **b. Disciplinary Probation**—Disciplinary probation is for a designated period of time and includes the probability of more severe disciplinary sanctions if the Student is found to violate any institutional regulation(s) during the probationary period.  If the student does not complete any other sanction imposed, the disciplinary probation will extend until that sanction is completed.

    *While on disciplinary probation, students may be ineligible to participate in certain University programs, e.g. study abroad and student leadership positions such as Resident Assistant positions, Owl Team, Temple Student Government, Main Campus Program Board, Service Immersion Program, Temple's hosting of The LeaderShape Institute, Fraternity and Sorority Council leadership positions, , etc.*

    **c. Loss of Privileges**—Denial of specified privileges for a designated period of time.

    **d. Fine—**Fines may be imposed upon an individual Student and range from $1 to $1,500. However, the combined fines for multiple violations of this Student Code found at a single hearing will not exceed $1,500.

    **e. Restitution**—Compensation for loss or damage to university property. This may take the form of appropriate service and/or monetary or material replacement.

    **f. Other Sanctions**—Work assignments, psycho-educational sessions, essays, service to the university, community service, meetings with educators/counselors, housing relocation, or other related assignments.

    **g. University Housing Suspension**—Separation of the Student from University Housing for a definite period of time, after which the Student is eligible to return. Conditions for readmission may be specified. When a sanction of suspension from University Housing is imposed, the Student is denied the opportunity to enter, even as a guest, or live in University Housing for a specified period of time. Students removed from University Housing shall remain liable for all housing and meal plan fees and are not eligible for any refunds for the full occupancy period of the Housing License or Dining Agreement.

    **h. University Housing Expulsion**—Permanent separation of the Student from the residence halls. When a sanction of expulsion from University Housing is imposed, the Student is permanently denied the opportunity to enter, even as a

TEMPLE/Meisse 00019

guest, or live in University Housing. Students removed from University Housing shall remain liable for all housing and meal plan fees and are not eligible for any refunds for the full occupancy period of the Housing License or Dining Agreement.

**i. University Suspension**—Separation of the Student from the university for a definite period of time, after which the Student is eligible to return. Conditions for readmission may be specified. When a sanction of suspension is imposed, the Student **MAY NOT**:

- Be present on university premises, even as a guest, to attend classes, receive academic credit for classes taken at Temple University or at any other institution during the period of suspension, or enter any university facility including residence, dining, recreation, leisure or library facilities, with the exception of facilities when they are open to the public and university-sponsored programs, activities or related events when they are open to the public;
- Participate in university registered or recognized clubs or organizations, or university sponsored programs, activities or related events;
- Be employed by the university in any capacity where the employment is contingent upon their status as a student.

*The suspended Student is responsible for payment of all tuition and fee charges in accordance with payment information contained in university policy.*

**j. University Expulsion**—Permanent separation of the Student from the university. When a sanction of expulsion is imposed, the Student **MAY NOT**:

- Be present on university premises, even as a guest, to attend classes, receive academic credit for classes taken at Temple, or enter any university facility including residence, dining, recreation, leisure or library facilities, with the exception of facilities when they are open to the public and university-sponsored programs, activities or related events when they are open to the public;
- Participate in university registered or recognized clubs or organizations, or university sponsored programs, activities or related events;
- Be employed by the university in any capacity contingent upon their status as a student.

*The expelled* Student *is responsible for payment of all tuition and fee charges in accordance with payment information as contained in university policy. The expelled Student will have access to University email and files for 30 days from the date that the conduct case is final. The Student must remove any information prior to that date. The University is not responsible for saving data after the 30-day deadline has passed.*

TEMPLE/Meisse 00020

**k. Revocation of Admission and/or Degree**—Admission to or a degree awarded from the university may be revoked for fraud, misrepresentation, or other violations of university standards in obtaining the degree, or for other serious violations committed by a Student prior to graduation.

**l. Academic Sanctions-** A grade reduction, failing grade and other appropriate academic sanctions.

**m. Minimum Mandatory Sanctions for Alcohol and Drug violations:**

**First Finding of Responsibility:**
- Notification of parent(s)/guardian(s) regarding violation(s) where the Accused Student is under the age of 21.
- Mandatory participation in Temple University's Drug and Alcohol Offense Program (DAO). Completion of the appropriately assigned track(s). A Student who fails to satisfy the sanction requirement in the specified time may be charged with an additional violation of the Student Conduct Code.
- Disciplinary probation for a minimum of 15 weeks, not to exceed 20 weeks.
- Fine of **$250**

**Second Finding of Responsibility:**
- Notification of parent(s)/guardian(s) regarding violation(s) where the Accused Student is under the age of 21.
- Individual alcohol and drug assessment with DAO program staff and completion of the appropriately assigned track(s). A Student who fails to satisfy the sanction requirement in the specified time may be charged with an additional violation of the Student Conduct Code.
- Disciplinary probation for a minimum of 15 weeks with a maximum to be determined by the panel. This extension of disciplinary probation may begin when the initial disciplinary probation ends.
- Fine of **$750**

**Third Finding of Responsibility:**
- Notification of parent(s)/guardian(s) regarding violation(s) where the Accused Student is under the age of 21.
- Suspension/expulsion from the university.
- At the discretion of the University Code Administrator, a fine of $1,000 may also be imposed.

**n. No Contact Order** – A directive to cease and desist from any intentional contact, direct or indirect, with one or more designated persons or group(s) through any means, including personal contact, electronic, social media interaction, email, text, telephone, through a third party, or by any other means.

21

**TEMPLE/Meisse 00021**

Should the student fail to cease contact, they will be subject to additional disciplinary sanctioning.

**o. Additional Organizational Sanctions:**

**In addition to the aforementioned sanctions, organizations can also receive the following sanctions:**

1) **Social Probation** – Social probation is for a designated period of time and includes the probability of more severe disciplinary sanctions if the organization is found to violate any university policy during the probationary period.  If an organization does not complete any sanction, the social probationary period will extend until all sanctions are completed.
2) **Suspension of Social Privileges** – The loss of all or partial social function privileges for a defined period of time.
3) **Loss of University Privileges and Services –** The loss of university privileges (e.g. space reservations, etc.) for a defined period of time.
4) **Suspension of the Organization –** The loss of University recognition for a defined or indefinite period of time.  When an organization is not recognized by the University it cannot claim to be affiliated with Temple University and have the rights and benefits that are afforded to recognized organizations.  The return of suspended organizations is contingent on and subject to compliance with applicable university processes and policies in effect at the time of return.

2. More than one of the sanctions listed above may be imposed for any single violation. The full range of sanctions is available for any violation depending on the nature and severity of the violation.

3. No Student with outstanding sanctions will be permitted to graduate until the sanctions have been completed.

4. Those sanctions listed above in Article IV D 1a-f, may be imposed upon groups or student organizations.  Additionally, groups and/or student organizations may be sanctioned with loss of selected rights and privileges for a specified period of time or suspension from the University for a specified period of time.  The organization will have to follow all applicable policies to be considered for university recognition once the period of suspension is over.

The University, in its sole discretion, may report publicly some or all of the final sanctions against student groups or organizations.

**E. Appeals**

TEMPLE/Meisse 00022

1. A decision reached by the Student Conduct Board or the University Code Administrator may be appealed by the Accused Student or Student Organization to an Appellate Board within five business days of the decision. Such appeals must be submitted in writing to the Student Conduct Administrator.  In circumstances of sexual assault, domestic violence, dating violence, stalking, and/or sexual exploitation, the accuser ("Accuser") has the same right to appeal the Student Conduct Board's or University Code Administrator's decision or respond to the Accused Student's or Student Organization's appeal.  An Accused Student or Student Organization may respond to an Accuser's appeal.

2. An Accused Student, Student Organization, or Accuser may respond to the other's appeal within five business days after the Student Conduct Administrator sends the appeal to the student.

3. The Student Conduct Administrator will review the appeal and any response and forward it to the Appellate Board if the appeal adequately addresses at least one of the two grounds stated in Article IV.E4.

4. An appeal shall be limited to a review of the record of the Student Conduct Board Hearing and supporting documents to determine whether:

   A.  There were procedural defects that substantially prevented a full and fair hearing on the merits;
   B.  There exists new evidence sufficient to alter the decision that was not known and could not have been known at the time of the original hearing.

5. The Appellate Board will review the appeal and the record of the Student Conduct Board Hearing. In the event that the Appellate Board does not recommend that the original decision be affirmed, the Appellate Board may take the following actions:

   A.  If a majority of the Appellate Board decides that there were procedural defects that substantially prevented a full and fair hearing, the Appellate Board will return the case for a new hearing before a Student Conduct Board;
   B.  If a majority of the Appellate Board decides that new information sufficient to alter the decision was not known, and could not have been known to the person appealing at the time of the original hearing, the Appellate Board will return the case for a new hearing before a Student Conduct Board.

6. Appellate Board proceedings are not recorded.

7. The Student Conduct Administrator shall advise the Accused Student, group and/or organization, and the Complainant in writing of the Appellate Board decision and there shall be no further appeals.

**F. Status of a Student Pending Appeal**

TEMPLE/Meisse 00023

1.  The academic status of a Student who has been expelled or suspended by the University Code Administrator may not be altered pending completion of the appeal process, except as provided in Article III.B of the Student Code. Generally, it is presumed that a Student may participate in any university registered or recognized club or organizational activity, or any university sponsored program, activity or related event pending completion of the appeal process. However, the University Code Administrator or their designee may, in their sole discretion, prohibit a Student from (1) residing in or being present in University Housing or (2) participating in any university registered or recognized club or organizational activity, or any university-sponsored program, activity or related event pending completion of the appeal process.

2.  The results of a disciplinary proceeding do not become final until all internal appeals have been resolved.

## ARTICLE V: RELATED GRIEVANCE PROCEDURES

Temple University has established due process procedures for the resolution of academic, administrative and employment grievances initiated by students against the university.

**1. Academic Grievances:** A Student who believes that capricious or arbitrary judgment has been used in the evaluation of academic work should follow the Academic Grievance Procedure applicable in the School/ College in which the academic work was performed. Copies of the procedures as well as information on the Academic Ombudsperson are available in the office of the appropriate academic dean and on the respective webpage of each School/College.

**2. Additional Assistance:** A Student who is unable to resolve an administrative grievance, including incidents involving student employment through regular administrative offices, should consult with the Dean of Students Office.

**3. Sexual Harassment Grievances:** In addition to reporting the incident to Campus Safety Services, a Student who experiences sexual harassment should contact the Office of Equal Opportunity Compliance, the University's Title IX Coordinator, or a Sexual Harassment Ombudsperson and follow the procedures outlined in the Sexual Harassment Policy.  The University's Policy on Sexual Harassment 04.82.01, which may be found on the university's policies and procedures webpage at http://policies.temple.edu.

**4. Sexual Assault, Domestic or Dating Violence, Stalking, and Sexual Exploitation Grievances:** In addition to reporting the incident to Campus Safety Services, a Student who experiences a sexual assault, domestic or dating violence, stalking, or sexual exploitation should contact the University's Title IX Coordinator, the Wellness Resource Center, and/or Tuttleman Counseling Services and follow the procedures outlined in the University's Policy on Preventing and Addressing Sexual Misconduct 04.82.02 which may be found on the university's policies and procedures webpage at http://policies.temple.edu.

TEMPLE/Meisse 00024

**5. Student and Faculty Academic Rights and Responsibilities**: Temple University students who believe that instructors are introducing extraneous material into class discussions or that their grades are being affected by their opinions or views that are unrelated to a course's subject matter can file a complaint under the University's Policy on Student and Faculty Academic Rights and Responsibilities 03.70.02, which may be found on the university's policies and procedures webpage at http://policies.temple.edu.

The policy encourages students to first discuss their concerns with their instructor. If a student is uncomfortable doing so, or if discussions with the instructor do not resolve the student's concerns, an informal complaint can be made to the Student Ombudsperson for the student's school or college (http://www.temple.edu/eoc/ombudspersons.htm. Unresolved complaints may be referred to the dean for handling in accordance with the school or college's established grievance procedure. Final appeals will be determined by the Provost.

## ARTICLE VI: INTERPRETATION, REVISION AND STUDENT CONDUCT FILES

A. The Student Code shall be reviewed every three years under the direction of the Student Conduct Administrator and revised as determined by the University Code Administrator.

B. Student Conduct files shall be maintained separately from other files of the Student. Access to them will be governed by the current university policy on the disclosure of information of Student, faculty, and employee records. Information from the Student Conduct files will not be made available to unauthorized persons within the university community or to any non- university person without the express written consent of the student involved except under legal compulsion or in cases where safety of persons is involved. All Student Conduct files will be retained for at least six years after graduation or separation from the university.

## ARTICLE VII: NOTICE/KNOWLEDGE OF STUDENT CODE

Copies of this Student Code will be posted on the university's policies and procedures webpage at http://policies.temple.edu, which is information provided to each incoming Student and will be generally available throughout the university at all times. Students are responsible for knowing the content of the Student Code. Ignorance of Student Code provisions will not constitute a defense in any proceeding against a Student.

**Notes**

**1. Dates of official enactment and amendments:**

TEMPLE/Meisse 00025

Implemented January 1, 2004; revised July 31, 2006; revised August 31, 2009; revised August 20, 2012; revised October 1, 2013; revised March 2015; revised April 2016; revised May 2016.

**2. History:**

The historical information for this policy is not available as policy was created before a history requirement was created.

> **Reviewed By:**
> Student Affairs professionals and the Office of University Counsel.

**3. Cross References/Appendix:**
> Any university policy, rule, or regulation published in hard copy or available electronically on the university website, including but not limited to the University Alcohol Policy, the Temple University Policy on Preventing and Addressing Sexual Misconduct, the Temple University Policy on Sexual Harassment, the Computer Usage Policy.

**TEMPLE/Meisse 00026**

For Immediate Release:
Saturday, August 29, 2020

Contact:
James Garrow
james.garrow@phila.gov

## Health Department Issues New Guidance on Social Gatherings at Colleges and Universities

PHILADELPHIA--The Health Department issued new guidance for college and university students to avoid all social gatherings with people outside of their household. This new guidance was developed in response to ongoing outbreaks at colleges and universities across the country and here in Philadelphia. Interviews with students who have tested positive have identified some who had attended small social gatherings with fewer than the current 25-person legal limit. Whenever people cannot avoid coming in close contact with those outside their household, the Health Department recommends, they should wear masks.

"We have been monitoring the outbreaks in colleges across the country, and are trying to limit the spread if COVID-19 in colleges here," Health Commissioner Dr. Thomas Farley said. "It does not require large social gatherings for this virus to spread.  Any time two or more people are near each other without wearing masks, there is a risk."

The Health Department is currently developing communications to colleges and universities detailing the new guidance. The colleges and universities have been working closely with the Health Department on plans to reduce the risk of spread on campus and are following those plans.  However, interviews suggest that risk continues in small social gatherings that are not organized or sanctioned by colleges.

In response to the COVID-19 pandemic, the City of Philadelphia has issued numerous guidelines for closure and subsequent re-opening as case counts have dropped. Each guidance document continues to recommend that everyone in Philadelphia continue to take the following precautions to prevent the spread of COVID-19:

- Wear a mask when around others
- Stay at least six feet away from others
- Wash hands frequently
- Seek testing if symptomatic or if exposed to a confirmed case

**TEMPLE/Meisse 00027**

The City's COVID-19 website is always updated with the latest guidance, recommendations, and data: https://www.phila.gov/COVID.

###

**TEMPLE/Meisse 00028**

Thanks,
**Bernadette Matthis, MSBA MT (ASCP)**
Laboratory Director
Philadelphia Department of Public Health | Bureau of Laboratories
O: 215-685-6773
C: 215-847-9496 or C#2: 609-284-0355

---

**From:** Sarah J. Powell <sarah.powell@temple.edu>
**Sent:** Saturday, August 29, 2020 7:50 PM
**To:** Thomas Farley <Thomas.Farley@Phila.gov>; Hannah Lawman <Hannah.Lawman@Phila.gov>; Claire Newbern <Claire.Newbern@Phila.gov>; Colleen Tingey <Colleen.Tingey@Phila.gov>; Angelico Razon <Angelico.Razon@Phila.gov>; Emily Klein <Emily.Klein@phila.gov>; Bernadette Matthis <Bernadette.Matthis@Phila.gov>; Denys, Mark <Mark.Denys@tuhs.temple.edu>; Molly Harrar <Molly.Harrar@Phila.gov>; James Garrow <James.Garrow@phila.gov>; Jeffrey Hom <Jeffrey.Hom@Phila.gov>; Raymond Betzner <betzner@temple.edu>
**Subject:** RE: [External] Temple cases - Email addresses

**External Email Notice. This email comes from outside of City government. Do not click on links or open attachments unless you recognize the sender.**

Good evening, Dr. Farley,

We just sent a TUalert. This is the content:

City health officials have issued new guidelines. Temple is directing students to avoid all social gatherings in order to limit the spread COVID-19. New COVID cases are coming from even small gatherings. Follow the four pillars.

Thank you,
Sarah

Sarah J. Powell
Director of Emergency Management
Temple University
Office: 215-204-7470
Cell: 267-304-5187

---

**From:** Thomas Farley <Thomas.Farley@Phila.gov>
**Sent:** Saturday, August 29, 2020 7:25 PM
**To:** Sarah J. Powell <sarah.powell@temple.edu>; Hannah Lawman <Hannah.Lawman@Phila.gov>; Claire Newbern <Claire.Newbern@Phila.gov>; Colleen Tingey <Colleen.Tingey@Phila.gov>; Angelico Razon <Angelico.Razon@Phila.gov>; Emily Klein <Emily.Klein@phila.gov>; Bernadette Matthis <Bernadette.Matthis@Phila.gov>; Denys, Mark <Mark.Denys@tuhs.temple.edu>; Molly Harrar <Molly.Harrar@Phila.gov>; James Garrow <James.Garrow@phila.gov>; Jeffrey Hom <Jeffrey.Hom@Phila.gov>; Raymond Betzner <betzner@temple.edu>
**Subject:** RE: [External] Temple cases - Email addresses

Here's a link to the release text.  It follows what we discussed this afternoon.

Can you distribute parallel messaging campus-wide?  I understand that there is  "Temple Alert" message distribution system that is used when there is a shooting or something.  Can you do that?  It is Saturday night and many students may be planning to go to small gatherings, which we'd like to stop.

https://docs.google.com/document/d/1Ez15WVg_8IMPSnyfhjeNRUlfloKQcY3_SoKL1NEsX_I/edit

7

TEMPLE/Meisse 00029

**From:** Sarah J. Powell <sarah.powell@temple.edu>
**Sent:** Saturday, August 29, 2020 7:21 PM
**To:** Hannah Lawman <Hannah.Lawman@Phila.gov>; Claire Newbern <Claire.Newbern@Phila.gov>; Colleen Tingey <Colleen.Tingey@Phila.gov>; Thomas Farley <Thomas.Farley@Phila.gov>; Angelico Razon <Angelico.Razon@Phila.gov>; Emily Klein <Emily.Klein@phila.gov>; Bernadette Matthis <Bernadette.Matthis@Phila.gov>; Denys, Mark <Mark.Denys@tuhs.temple.edu>; Molly Harrar <Molly.Harrar@Phila.gov>; James Garrow <James.Garrow@phila.gov>; Jeffrey Hom <Jeffrey.Hom@Phila.gov>; Raymond Betzner <betzner@temple.edu>
**Subject:** Re: [External] Temple cases - Email addresses

> **External Email Notice. This email comes from outside of City government. Do not click on links or open attachments unless you recognize the sender.**

Hello all,

We are being asked by the press to respond to new guidance issued by the city, directed at college students about social gatherings. We are unsure where this new guidance is located. Would someone be able to direct me? Perhaps Jim? I have included Ray Betzner.

Thank you,
Sarah

Sent from my Verizon, Samsung Galaxy smartphone
Get Outlook for Android

---

**From:** Jeffrey Hom <Jeffrey.Hom@Phila.gov>
**Sent:** Saturday, August 29, 2020 2:58:44 PM
**To:** Hannah Lawman <Hannah.Lawman@Phila.gov>; Sarah J. Powell <sarah.powell@temple.edu>; Claire Newbern <Claire.Newbern@Phila.gov>; Colleen Tingey <Colleen.Tingey@Phila.gov>; Thomas Farley <Thomas.Farley@Phila.gov>; Angelico Razon <Angelico.Razon@Phila.gov>; Emily Klein <Emily.Klein@phila.gov>; Bernadette Matthis <Bernadette.Matthis@Phila.gov>; Denys, Mark <Mark.Denys@tuhs.temple.edu>; Molly Harrar <Molly.Harrar@Phila.gov>; James Garrow <James.Garrow@phila.gov>
**Subject:** [External] Temple cases - Email addresses

All,

A calendar invite with tomorrow's call-in information will be sent soon, but here's everyone's email addresses. Thanks to everyone for all you're doing.

Jeff

This communication and any attachments are for intended recipients only. They may contain confidential and/or privileged information. If you are not the intended recipient, or believe you may have received this communication in error, please do not review, disclose, disseminate, distribute or duplicate it or its contents. Please notify the sender immediately by telephone or email, and delete the email and attachments without making or retaining any copy.

This electronic message is intended to be for the use of the named recipient, and may contain information that is confidential or privileged. This communication may contain protected health information (PHI) that is legally protected from inappropriate disclosure by the Privacy Standards of the Health Insurance Portability and Accountability Act (HIPAA) and relevant Pennsylvania Laws. You can direct questions concerning PHI or HIPAA to the Corporate Compliance and Privacy Officer at (215) 707-5605. If you are not the intended recipient, please note that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this message in error, you should notify the sender immediately by telephone or by return e-mail and delete and destroy all copies of this message.

TEMPLE/Meisse 00030

**Friday, September 11, 2020 at 11:47:57 AM Eastern Daylight Time**

**Subject:** TUalert

**Date:** Saturday, August 29, 2020 at 7:45:45 PM Eastern Daylight Time

**From:** TUalert

**To:** Krystal N. Allen

City health officials have issued new guidelines. Temple is directing students to avoid all social gatherings in order to limit the spread COVID-19. New COVID cases are coming from even small gatherings. Follow the four pillars.

# TEMPLE UNIVERSITY
## POLICIES AND PROCEDURES MANUAL

**Title:** Temple University Good Neighbor Policy
**Policy Number:** 03.70.13
**Issuing Authority:** Division of Student Affairs
**Responsible Officer:** Dean of Students

**Date Created:** March 1, 2011
**Date Last Amended/Reviewed:**  December 2019
**Date Scheduled for Review:**  December 2024
**Reviewing Office:** Dean of Students

## Scope of Policy & Rationale

The purpose of this policy is to encourage Temple University students to engage in proactive and intentional efforts to build connections and relationships with their residential community. In so doing, this policy seeks to establish basic guidelines for Temple students to be good neighbors and to conduct themselves as responsible members of the community. Ultimately, students are responsible for abiding by the Student Code of Conduct as well as all city, state and federal laws. The Student Code is not limited to conduct within the formal boundaries of the university campuses. The Code applies to conduct in the communities where students live and will be enforced fairly and consistently. In efforts to encourage positive relationships with community members, this policy gives special attention to issues of noise, alcohol consumption, trash, and conduct. It is the university's hope and priority that students feel integrated into the rich fabric of this diverse community, contribute to an inclusive neighborhood, and behave as responsible stewards of Philadelphia.

The guidelines set forth are consistent with the educational mission of Temple University to help students become responsible citizens who respect the rights and needs of their neighbors and cultivate positive relationships within the community.

## Definitions

    1. The term "**policy**" means the written regulations of the university as found in university documents including, but not limited to, the Student Code, Residence Life publications and agreements, the university policies web page, and Graduate/Undergraduate Bulletins.

    2. The term "**student**" includes all persons taking courses at the university, either full-time or part-time, including but not limited to:

        a.  Persons who withdraw after allegedly violating the Student Code;

        b.  Persons who are not officially enrolled for a particular term but who have a

**TEMPLE/Meisse 00032**

continuing relationship with the university;

   c. Persons who have been notified of their acceptance to the university;

   d. Persons who are living in university residence halls, although not enrolled in this institution; or

   e. Persons participating in study abroad programs.

3. The term "**student organization**" means any number of persons who have complied with the formal requirements for university recognition.

4. The term "**university**" means Temple University--Of The Commonwealth System of Higher Education.

5. The term "**inclusive neighborhood**" means a neighborhood that involves all people, regardless of their identities.

6. The term "**stewards**" means people who look after, take care of, and are responsible for something.

## Policy Statement

Students and student organizations are expected to maintain a safe, clean, and respectable environment for the health and well-being of themselves and their organization members, guests, neighbors, and future residents.

### Responsibilities of the Students

Specifically, students must:

1. Observe state and local laws governing alcohol and drug use, including the prohibition against the sale of alcohol without a license (for example, charging a cover charge for a party where alcohol is served or charging a cup fee).

2. Abide by the university's Student Drug and Alcohol Policy.

3. Together with landlords, abide by fire, health, zoning, building and safety codes, including occupancy limits, and the City of Philadelphia's Department of Licenses and Inspections code and ordinances.

4. Abide by all city, state and federal laws.

5. Dispose of litter, household garbage/trash, and recycling on a regular basis in an appropriate manner. Refer to City of Philadelphia's regulations for trash disposal and recycling, and be aware of  the  neighborhood's trash and recycling collection schedule.

6. Complete clean-up within 24 hours after social functions to ensure litter and trash are removed from the neighborhood.

7. When responsible for outside maintenance pursuant to lease or rental agreements,

**TEMPLE/Meisse 00033**

maintain lawn and landscaping on a regular basis, as well as snow/ice removal when applicable.

8.  Foster and maintain good community relations and cooperation with neighbors and authorities.

9.  Take proactive steps to manage the conduct of guests, including measures that reduce the risk of harm.

10. Take active steps to prevent damage to neighbors' property.

11. Be engaged in mediating and resolving problems or concerns with neighbors and roommates in a timely and civil manner.

12. Take proper care of all pets and pet waste according to animal ordinances.

13. Use elevated or amplified sound only in accordance with the City of Philadelphia Noise Ordinance.

**Communications and Training**
The Temple University Good Neighbor Policy will be disseminated with the assistance of the Good Neighbor Committee, Temple Student Government, New Student and Family Programs, Campus Safety Services, and University Housing and Residential Life Specific educational measures are embedded in the electronic version of this policy.

## Procedures

The Good Neighbor Policy reinforces and supports the principle that Temple University students and/or student organizations can be held responsible under the authority of the Student Code of Conduct for their behavior outside the defined limits of the Temple University campuses. Students and/or student organizations can be referred to the office of Student Conduct and Community Standards, under the direction of the Dean of Students and the Division of Student Affairs, for alleged violations of the Code of Conduct and the Good Neighbor Policy. Upon referral to the office of Student Conduct and Community Standards, students and/or student organizations will be subject to the standard process for student conduct referrals.

Violations of this policy may result in university sanctions ranging from community service and education to suspension or expulsion from the university. Violations of the law may result in separate and additional penalties through local and state authorities such as fines, citations, or arrest.

## Notes

**1. Dates of official enactment and amendments:**
Adopted by the President on March 1, 2011.
Amended December 2019.

**2. History:**

**TEMPLE/Meisse 00034**

None

**3. Cross References/Appendix:**

City of Philadelphia's Partners for Good Housing produced by the Department of Licenses and Inspections
https://www.phila.gov/media/20190517121208/partnersinhousing-Rev.-May-2019.pdf

City of Philadelphia Property Maintenance Code

City of Philadelphia Ordinance: CHAPTER 10-400. NOISE AND EXCESSIVE VIBRATION

City of Philadelphia Historical Commission §14-2007. Historic Buildings, Structures, Sites, Objects and Districts.

Temple University Student Conduct Code, policy no. 03.70.12

Philly 311

https://www.phila.gov/311/pages/default.aspx

4