# EXHIBIT 7



1500 WALNUT STREET, SUITE 500
PHILADELPHIA, PA 19102

▪ 215-535-3686

▪ Joseph@StudentDisciplineDefense.com

▪ StudentDisciplineDefense.com

Licensed in Pennsylvania, New Jersey, and New York

MEMO

Re:     Rebecca Meisse

Date:   November 13,2020

## BACKGROUND

Rebecca has been charged by Temple with violating:

> CC. 15. A. Other Violation of Other Published Policies: Violation of any university policy, or regulation published in hard copy or available electronically on the university website.
>
> CC. 15 B. Good Neighbor: Violation of any provision of the Good Neighbor Policy

On September 12th at 11:28pm, Philadelphia police responded to a call about a loud music complaint which was from apartment 1822 North 16th Street which is about 3 houses down from Rebecca's. The police arrived at her apartment and she answered the door. She and her roommates were having a gathering of about 20 people in their backyard who were all close friends. Rebecca was compliant with the police and they told me that they wanted everyone to leave. She went out back and everyone left our apartment. The police officer took her information which was her student ID number and her state license. Her roommate, Cassie Groncki was in the kitchen the whole time of the incident studying for an exam and she said that the music was not that loud and that she could not hear us in the back. Additionally, that night, there was about 3 other gatherings around Rebecca's backyard including the house directly behind us. There were a couple different sets of music playing.

The pending charges followed from the above incident.  A review of the rules, regulations, and policies shows that there was no violations and the charges are unfounded.

I.     There was no violation of the Good Neighbor Policy.

The good neighbor policy states in relevant part:

> **Violation of any provision of the Good Neighbor Policy, including but not limited to: 1.) Abide by fire, health, zoning, building and safety codes, including occupancy limits, and the City of Philadelphia's Department of Licenses and Inspections code and ordinances. 2.) Dispose of litter, trash, and garbage on a regular basis in an**

**TEMPLE/Meisse 00065**

> appropriate manner. Refer to City of Philadelphia's regulations for trash disposal and be aware of your neighborhood's trash collection schedule 3.) Complete clean up within 24 hours after social functions to ensure litter and trash is removed from the neighborhood. 4.) When responsible for outside maintenance under lease or rental agreements, maintain lawn and landscaping on a regular basis. 5.) Foster and maintain good community relations and cooperation with neighbors and authorities. 6.) Take proactive steps to manage the conduct of guests, including measures that reduce the risk of harm. 7.) Take active steps to prevent damage to neighbors' property. 8.) Be engaged in mediating and resolving problems or concerns with neighbors in a timely and civil manner. 9.) Use elevated or amplified sound only in accordance with the City of Philadelphia Noise Ordinance. Alcohol and Other Drugs: 1.) Observe state and local laws governing alcohol and drug use, including the prohibition against the sale of alcohol without a license (for example, charging a cover charge for a party where alcohol is served or charging a cup fee). 2.) Abide by the university's Alcohol and Other Drug Policy.

The only possible violation was that of the Philadelphia Noise Ordinance (Phila. Code. 10-403(2). There is no evidence, though, that there was a violation of Phila. Code. 10-403(2) which states in relevant part:

> (2) *Sound From Residential Properties.* No person shall create or cause, or permit the creation of, sound originating from a residential property audible at a distance greater than one hundred feet from the property boundary or that exceeds 3 decibels above background level measured beyond the property boundary except for the following: [exceptions not relevant]

Looking at the ordinance, there is no evidence that Rebecca's music could be heard more than 100' from the property line.  As mentioned above, there were multiple gatherings with music occurring at the same time.  As to the distance itself, there is no evidence that Rebecca's music could be heard more than 100' from the property line.

 The below image shows a satellite photo of Rebecca's house.

TEMPLE/Meisse 00066



First, as you can see from the above picture, it is 90 feet from the middle of the patio to the street. The regulations say that the sound is heard more than 100' from the *property line*. It is clear that the police in parking in front of the house would not have been more than 100' from the property line.



**TEMPLE/Meisse 00067**

Second, it is also clear from the above picture that the furthest distance from the property line to 1822 North 16th street was 78'. Even if the music was heard by the Complainant, and there was no way to distinguish which gathering could be heard, the distance is less than 100'. Thus, it cannot be shown based on the evidence that the noise was heard more that 100' from the property line.

It is also unlikely that the police had equipment to measure the ambient noise levels. Because there is a precise definition of the difference in volume levels, this would need to be measured with specialized equipment. Given the above, it seems that there is insufficient evidence to show that the noise ordinance was violated. Furthermore, there were three other parties going on at the same time, so Police could not distinguish whether Rebecca's party was the source of the noise. Lastly, Rebecca's roommate who was in the building said she could not hear music from the outside.

That being said, the police made a polite request to end the party which was complied with. That does not mean that there was a violation of the noise ordinance. This was Rebecca acting as a good neighbor. There is no evidence of any other violation which has been presented.

In total, there does not appear to be any violation of the good neighbor policy.

II. "Other Violation of Other Published Policies"

This is a vague and ambiguous statement which does not provide any notice Rebecca of the allegations. It is conceivable that the allegation stems from the gathering itself. First, a review of the Temple policies failed to show that there was a published policy concerning gatherings of close friends off campus. It seems that the only guidance was to comply with municipal regulations. At the time, outdoor gatherings of 25 people or less were permitted by the city of Philadelphia. Because the only evidence is that the gathering was 25 people or less, this was not a violation. Also, those in attendance were close friends and not random strangers

Furthermore, Temple published a policy concerning the First Amendment right to associate and that there would be no disciplinary action taken for gatherings. See the email from Dean Ives on September 25, 2020:

> Please know that Temple's COVID-19 protocols do not interfere with any student's First Amendment right to assemble. To be clear, students are allowed to gather for First Amendment activities in ways that are consistent with citywide safety protocols and will not face discipline from Temple for such participation. As examples, students who want to volunteer for the upcoming elections, participate in protests, or attend gatherings that comply with city rules, will not be subject to university discipline.

Thus, it seems that holding Rebecca accountable for having a gathering in compliance with city rules as here would violate Rebecca's First Amendment rights and the published policy of Temple. Rebecca did not violate any Temple policy for the gathering.

III.   Amanda Fish E-Mail of October 14, 2020

On October 7, 2020, Rebecca wrote to Amanda Fish the following:

Amanda,

Before I decide on the next steps, I am still confused about how I allegedly violated the Temple policy in light of the Dean's statement on First Amendment issues. Are you saying that despite the First Amendment statement from the Dean, having a gathering in compliance with the City polices still violates the Temple policy in the e-mail? Or is there some other policy I am accused of violating?

As to the Good Neighbor policy, is Temple saying that the mere fact that someone complained about the noise means that we violated the ordinance?

On October 14, 2020, Amanda Fish wrote in response:

   Thank you for your patience as we work through this together. I appreciate your mention of Dean Ives' Statement and your thoughtful questions. For some clarification, the statement made by Dean Ives is intended to focus on protests and civic engagement related to current events in our country. The statement is not talking about parties or social gatherings. Additionally, it is not only the noise complaint that has brought about the Good Neighbor charge but also the fact that the police responded to the complaint, stated that they also witnessed loud music, and felt the need to submit that to our office.

   The response from Ms. Fish demonstrates two disturbing items. First, her explanation as to Dean Ives' statement demonstrates that a finding of responsibility for Rebecca's gathering would be a violation of her First Amendment rights. There was no evidence that Rebecca violated any municipal or state ordinance concerning the gathering. Temple appears to be stating that the gathering's purpose and content determines whether there is a violation. In other words, if the students at Rebecca's gathering were there to discuss current events, then there would be no violation. If the students were there to discuss music, then there would be a violation. That fails muster as it seeks to hold Rebecca responsible based on the discussions of her gathering. Furthermore, as Dean Ives was well aware, Temple cannot have policies more restrictive than that of the municipality off-campus.

   Second, concerning the Good Neighbor violation, the statement shows a violation of the premise of "innocent until proven guilty." Ms. Fish states that because the police arrived and reported the incident means that there was a violation. That is a faulty premise. No violation was found at the time of the incident. As discussed above, that the police responded to the complaint is nothing more than a response to a complaint and does not mean that there was a violation. A complaint does not mean there was a violation as there are specific requirements for a finding that were not met here. Therefore, there was no violation, and Temple's position is in effect, holding Rebecca responsible because she did not prove there was no violation.

Thus, a finding of responsibility for Rebecca would constitute a violation of her First Amendment rights of assembly as well Fifth and Fourteenth Amendment rights to due process as there is only evidence of a complaint and not a violation.

## **CONCLUSION**

A review of the available information, Temple policies, and Philadelphia ordinances shows that Rebecca is not responsible for the alleged violations, and she should be cleared of the allegations.

**TEMPLE/Meisse 00070**